UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

N.E., et al.,

Plaintiffs,

v.

SEATTLE SCHOOL DISTRICT,

Defendant.

CASE NO. C15-1659JLR

ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

## I. INTRODUCTION

Before the court is Plaintiffs N.E. ("the Student") and his parents', C.E. and P.E. ("the Parents"), motion for a temporary restraining order and a preliminary injunction. (Mot. (Dkt. # 2).) This case is an appeal from an administrative law judge's ("ALJ") decision regarding the Student's "stay put" placement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (*See* Compl. (Dkt. # 1); Hruska Decl. (Dkt. # 3) ¶ 7, Ex. 7 ("ALJ Decision")); 20 U.S.C. §§ 1415(i)(2)(A), (j); *A.D. ex rel. L.D. v. Haw. Dep't of Educ.*, 727 F.3d 911, 913-14 (9th Cir. 2013) (holding

that an administrative "stay put" order is "appealable under the collateral order doctrine"). Plaintiffs ask the court to reverse the ALJ's decision and order Defendant Seattle School District ("the SSD") to place the Student in a general education setting consistent with a December 2014 individualized education program ("IEP") pending the outcome of Plaintiffs' due process challenge to SSD's proposed placement. (*See* Compl.; Mot. at 1-2); 20 U.S.C. §§ 1412(a)(4), 1414(d), 1415(j). The present motion seeks a temporary restraining order ("TRO") and a preliminary injunction to that effect. (*See* Mot. at 1-2.) The court has reviewed the submissions of the parties', the balance of the record, and the relevant law, and has heard oral argument. Being fully advised, the court DENIES Plaintiffs' motion.[1]

## II. BACKGROUND

The Student is a male child who was in third grade at Newport Heights Elementary School in the Bellevue School District ("the BSD") for most of the 2014-15 school year. (*See* ALJ Decision at 2.) During most of that year and in the prior years, the Student's IEP placed him in general education classes with paraeducator support ("general classes") for the majority of the school day. (*See id.*; C.E. Decl. (Dkt. # 4) ¶ 1.) The most recent IEP reflecting that arrangement dates from December 2014 ("the December 2014 IEP"). (*See* ALJ Decision at 2; C.E. Decl. ¶ 2, Ex. 1 ("12/14 IEP").)

[1] Because this motion turns on a legal issue and the relevant facts are undisputed, the court resolves both Plaintiffs' request for a TRO and their request for a preliminary injunction at this time. *See infra* Parts III.A., C.

The Student had substantial difficulties during the 2014-15 school year. (*See* ALJ Decision at 2; C.E. Decl. ¶ 3.) School officials reported that the Student exhibited serious behavioral problems on a regular basis throughout that year, and as a result, the BSD began considering changes. (*See* ALJ Decision at 2; Hruska Decl. ¶ 5, Ex. 4 at 10-13 ("Landwehr Decl.") ¶¶ 2-5.) An IEP meeting occurred on May 26, 2015, at which relevant BSD officials and teachers and the Parents were present along with their respective counsel. (*See* ALJ Decision at 2; Landwehr Decl. ¶ 5.) At this meeting, the BSD proposed a new IEP that would place the Student in separate, specialized classes for students with behavioral and emotional disorders ("separate classes"). (*See id.*; C.E. Decl. ¶ 3.) The Parents objected to this proposal, writing "disagree" on the front sheet of the proposed IEP. (*See* ALJ Decision at 2; C.E. Decl. ¶ 3; Landwehr Decl. ¶ 5.)

BSD officials and the Parents also discussed where to place the Student for the remainder of the school year. (*See* ALJ Decision at 2.) Such a discussion was necessary because at that time the Student was subject to an emergency expulsion and the Parents did not feel comfortable with the Student returning to Newport Heights Elementary. (*See id.*; Landwehr Decl. ¶ 6.) The BSD and the Parents agreed that the Student would finish the final weeks of the 2014-15 school year at a different school. At that school, he would spend the majority of the day in a one-on-two setting involving the Student, a teacher, and a paraeducator, and no other students ("individual classes"). (*See* ALJ Decision at 2; C.E. Decl. ¶ 4; Landwehr Decl. ¶ 6.)

One day later, on May 27, 2015, the BSD produced a final IEP for the Student ("the May 2015 IEP"). (*See* ALJ Decision at 2; C.E. Decl. ¶ 5, Ex. 2 ("5/15 IEP").) The

May 2015 IEP had two stages: (1) the Student would finish the end of the 2014-15 school year in the agreed-upon individual classes; and (2) the Student would be placed in separate classes at the start of the 2015-16 school year. (*See* ALJ Decision at 2-3; C.E. Decl. ¶ 5; 5/15 IEP at 15-16.) The Parents received this IEP approximately one week later along with a prior written notice ("PWN") notifying the Parents that the BSD intended to alter the Student's educational placement and that the individual classes would serve as a transition to separate classes. (*See* ALJ Decision at 3; 5/15 IEP at 18-19 ("PWN"); C.E. Decl. ¶ 5.) The Parents did not file an administrative due process challenge to the May 2015 IEP and instead allowed the Student to continue attending the individual classes until the end of the school year on June 22, 2015. (*See* ALJ Decision at 2-3; C.E. Decl. ¶ 7.)

The Parents and the Student moved to Seattle in the summer of 2015 and contacted the SSD to enroll the Student. (*See* ALJ Decision at 3; C.E. Decl. ¶ 8; Landwehr Decl. ¶ 7.) The Parents requested continuation of individual classes similar to those in which the Student had completed the prior school year. (*See* ALJ Decision at 3; Landwehr Decl. ¶ 7.) The SSD, however, reviewed the Student's records and proposed placing him in separate classes similar to those contemplated in the second part of the BSD's May 2015 IEP. (*See* ALJ Decision at 3; C.E. Decl. ¶ 8; Landwehr Decl. ¶ 7.) The Parents objected and filed an administrative due process challenge to the SSD's decision. (*See* ALJ Decision at 3; Hruska Decl. ¶ 2, Ex. 1 ("DP Hearing Request").) At the same time, the Parents filed a motion for "stay put," arguing that the Student's "stay put" placement is the placement described in the December 2014 IEP—general classes.

(*See* ALJ Decision at 3; DP Hearing Request at 3; Hruska Decl. ¶ 3, Ex. 2 ("Stay Put Mot.")); 20 U.S.C. § 1415(j). The SSD resisted that motion and contended that the separate classes described in the May 2015 IEP represent the Student's "stay put" placement. (*See* ALJ Decision at 3; Hruska Decl. ¶¶ 4-6, Exs. 3-5.)

Following testimony and oral argument on the "stay put" motion, the ALJ sided with the SSD. (*See* ALJ Decision at 1, 4.) The ALJ determined that under Ninth Circuit law a student's "stay put" placement typically is the placement described in the last implemented IEP. (*See id.* at 3-4.) In addition, the ALJ found that the May 2015 IEP included a placement in separate classes and that that the May 2015 IEP was implemented because the Student had attended individual classes for several weeks, as described in the first part of the May 2015 IEP. (*See id.* at 4.) The ALJ therefore concluded that separate classes were the Student's "stay put" placement. (*See id.*) Plaintiffs filed this action as an interlocutory appeal from the ALJ's "stay put" decision. (*See* Compl.); *A.D. ex rel. L.D.*, 727 F.3d at 913-14. They now request a TRO and a preliminary injunction ordering the SSD to place the Student in general classes pending the outcome of their due process challenge. (*See* Mot.) Because they believe separate classes would be harmful to the Student, the Parents have kept the Student at home since the beginning of this school year. (*See* C.E. Decl. ¶ 9.) Plaintiffs' motion is now before the court.

//

//

//

## III. DISCUSSION

### A. Legal Standards

District courts apply a modified *de novo* standard of review when reviewing administrative decisions under IDEA. *See Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1108-09 (9th Cir. 2009); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-73 (9th Cir. 1993). Under this standard, the court has discretion as to the weight given to the administrative findings and should give them deference where the administrative decision was careful, thorough, impartial, and sensitive to the complexities of the case. *See Parents of Student R.J.*, 588 F.3d at 1008-09; *Jackson*, 4 F.3d at 1472, 1476. The party challenging the administrative ruling bears the burden of proof on appeal to the district court. *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1127 (9th Cir. 2003).

In order to merit a preliminary injunction, a plaintiff must establish that (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008); *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1117 (C.D. Cal. 2011) ("The standard for issuing a [TRO] is identical to the standard for issuing a preliminary injunction.").[2] This extraordinary remedy is "never awarded as of right." *Id.*

---

[2] The Ninth Circuit holds that its "serious questions" version of the sliding scale test for preliminary injunctions also remains viable after *Winter*. *See Alliance for Wild Rockies v.*

at 24. Instead, it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.[3]

**B. Stay Put**

IDEA's "stay put" provision dictates that while a due process challenge is pending, the student is entitled to remain in his or her "then-current educational placement," unless the parents and the state or local education agency otherwise agree. 20 U.S.C. § 1415(j); *see K.D. ex rel. C.L. v. Dep't of Ed. of Haw.*, 665 F.3d 1110, 1114-15 (9th Cir. 2011). Neither IDEA nor its legislative history defines "then-current educational placement." The Ninth Circuit has stated that "the current educational placement is typically the placement described in the child's most recently implemented IEP." *Johnson ex rel. Johnson v. Special Ed. Hearing Office of Cal.*, 287 F.3d 1176, 1180 (9th Cir. 2002); *see also K.D. ex rel. C.L.*, 665 F.3d at 1117-18 ("We have interpreted 'current educational placement' to mean 'the placement set forth in the child's

---

*Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The Ninth Circuit formulates the alternative test as follows:

> [S]erious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.

*Id.* at 1135. Plaintiffs have not argued this version of the preliminary injunction and TRO test. Even if they had, however, the court would deny their motion for failure to show either serious questions going to the merits or that the balance of hardships "tips sharply" toward them. *See id.*; *see infra* Part III.C.

[3] As the court indicated at oral argument, Plaintiff is incorrect in asserting that IDEA entitles a student to an automatic injunction pending appeal from an administrative determination of the student's "stay put" placement. *See Johnson ex rel. Johnson v. Special Ed. Hearing Office of Cal.*, 287 F.3d 1176, 1180 (9th Cir. 2002) ("We hold that a request to enjoin a preexisting 'stay put' order is handled appropriately by the district court's application of the traditional preliminary injunction analysis.").

last implemented IEP.' We have offered no additional guidance on the issue."). Temporary arrangements generally do not qualify as "stay put" placements. *See K.D. ex rel. C.L.*, 665 F.3d at 1118-21.

**C. Analysis**

This motion turns on whether the May 2015 IEP's separate classes are the placement described in the Student's last implemented IEP. *See id.* at 1117-18; *Johnson ex rel. Johnson*, 287 F.3d at 1180. The relevant facts are undisputed: (a) the May 2015 IEP prescribed separate classes after a transition period in individual classes; (b) the Student attended the individual classes, including after the Parents received the May 2015 IEP, but he moved before attending the separate classes; and (c) Plaintiffs did not challenge the May 2015 IEP after the BSD finalized it. (*See* ALJ Decision at 2-3; C.E. Decl. ¶¶ 5, 7; 5/15 IEP at 15-16, 18-19.) From these facts, the ALJ determined that the separate classes are the placement set forth in the May 2015 IEP, and that the May 2015 IEP was implemented because the Student attended the individual classes set forth in the first portion of that IEP. (*See* ALJ Decision at 3.) The ALJ therefore concluded that the separate classes are the placement set forth in the Student's last implemented IEP. (*See id.*)

Plaintiffs disagree with this conclusion. They contend that the separate classes cannot be the placement described in the Student's last implemented IEP because the

//

//

//

Student never attended the separate classes.[4] (*See* Mot. at 6-9, 11.) Plaintiffs' argument depends on the theory that multi-stage IEPs are divisible for purposes of the "stay put" analysis.[5] Accordingly, in order to prevail, Plaintiffs must establish that the court should either (i) disregard any unrealized stages of a partially realized multi-stage IEP when determining "the placement described in the child's most recently implemented IEP," *Johnson ex rel. Johnson*, 287 F.3d at 1180, or (ii) treat a multi-stage IEP as multiple IEPs, and any unrealized stage as an unimplemented IEP. The validity of this theory of IEPs presents a legal question.

Plaintiffs, however, offer no authority to show that their divide-and-conquer approach to multi-stage IEPs is valid, and the court has located none. (*See* Mot.)[6] Although the Ninth Circuit has not provided guidance on this particular issue, the Ninth Circuit has stated on several occasions that a child's "stay put" placement is typically the placement described in the child's last implemented IEP. *See K.D. ex rel. C.L.*, 665 F.3d at 1117-18; *Johnson ex rel. Johnson*, 287 F.3d at 1180. Nothing in this language

---

[4] Plaintiffs also argue that separate classes are not the Student's "stay put" placement because the Parents never agreed to separate classes. (*See* Mot. at 6-8.) This argument misconstrues the Ninth Circuit's standard for "stay put" or current educational placement, which is the placement described in the child's last implemented IEP, not the last placement to which the Parents agreed. *See K.D. ex rel. C.L.*, 665 F.3d at 1117-18; *Johnson ex rel. Johnson*, 287 F.3d at 1180.

[5] Plaintiffs do not contest that at least the first stage of the May 2015 IEP was implemented. (*See* Mot.)

[6] Both in their brief and at oral argument, Plaintiffs place significant reliance on *Verhoeven v. Brunswick School Committee*, 207 F.3d 1 (1st Cir. 1999). (*See* Mot. at 6-7.) *Verhoeven*, however, does not deal with a partially realized multi-stage IEP and also appears to apply a different "stay put" standard than does the Ninth Circuit. As such, the court does not find *Verhoeven* persuasive in the present circumstances.

suggests that courts should ignore any unrealized stages of a multi-stage IEP or treat such stages as distinct IEPs. Thus, finding no support for the legal theory on which Plaintiffs' motion depends, the court finds that Plaintiffs have failed to show that they are likely to succeed on the merits of their appeal. The court therefore denies Plaintiff's motion.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion for a TRO and a preliminary injunction (Dkt. # 2).

Dated this 27th day of October, 2015.

JAMES L. ROBART
United States District Judge