UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.E., et al.,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>SEATTLE SCHOOL DISTRICT,<br><br>　　　　　　Defendant. | CASE NO. C15-1659JLR<br><br>ORDER GRANTING MOTION TO DISMISS |

## I.　INTRODUCTION

Before the court is Defendant Seattle School District's ("the District") motion to dismiss this case as moot. (Mot. (Dkt. # 27).) Plaintiffs N.E. and his parents C.E. and P.E. ("the Parents") (collectively, "Plaintiffs") oppose the District's motion. (Resp. (Dkt. # 29).) The court has considered the District's motion, the parties' submissions in support of and opposition to the motion, the relevant portions of the record, and the

//

//

1 | applicable law.  Being fully advised,[1] the court grants the District's motion for the

2 | reasons set forth below.

## II.   BACKGROUND

On October 16, 2015, Plaintiffs filed this interlocutory appeal from an administrative law judge's ("ALJ") decision regarding N.E.'s "stay-put" placement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*  (*See* Compl. (Dkt. # 1) ¶ 1; 1st Hruska Decl. (Dkt. # 3) ¶ 7, Ex. 7 ("ALJ Decision")).)

N.E. is a male child who attended third grade at Newport Heights Elementary School in the Bellevue School District ("the BSD") for most of the 2014-15 school year. (*See* ALJ Decision at 2.)  During most of that year and in the prior years, N.E.'s individual education plan ("IEP") placed him in general education classes with paraeducator support ("general classes") for the majority of the school day.  (*See id.*; 1st C.E. Decl. (Dkt. # 4) ¶ 1.)  The most recent IEP reflecting that arrangement dates from December 2014 ("the December 2014 IEP").  (*See* ALJ Decision at 2; 1st C.E. Decl. ¶ 2, Ex. 1 ("12/14 IEP").)

N.E. had significant difficulties during the 2014-15 school year.  (*See* ALJ Decision at 2; 1st C.E. Decl. ¶ 3.)  Certain BSD officials and teachers, the Parents, and their respective counsel attended an IEP meeting on May 26, 2015.  (*See* ALJ Decision at 2; 1st Hruska Decl. ¶ 5, Ex. 4 at 10-13 ("Landwehr Decl.") ¶ 5.)  At the meeting, the BSD proposed a new IEP that would place N.E. in specialized classes for students with behavioral and emotional disorders ("separate classes").  (*See* Landwehr Decl. ¶ 5; 1st

---

[1] No party requests oral argument, and the court determines that oral argument would not be helpful to its disposition of the District's motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

C.E. Decl. ¶ 3.)  The Parents objected to this proposal.  (*See* ALJ Decision at 2; 1st C.E. Decl. ¶ 3; Landwehr Decl. ¶ 5.)

At the meeting, BSD officials and the Parents also discussed where to place N.E. for the remainder of the school year.  (*See* ALJ Decision at 2.)  When the meeting occurred, N.E. was subject to an emergency expulsion, and the Parents were uncomfortable with N.E. returning to Newport Heights Elementary.  (*See id.*; Landwehr Decl. ¶ 6.)  The BSD and the Parents agreed that N.E. would finish the final weeks of the 2014-15 school year at a different school in the district.  (*See* ALJ Decision at 2.)  At that school, N.E. would spend the majority of the day in a one-on-two setting that included N.E., a teacher, and a paraeducator, but no other students ("individual classes").  (*See id.*; 1st C.E. Decl. ¶ 4; Landwehr Decl. ¶ 6.)

One day later, on May 27, 2015, the BSD produced a final IEP for N.E. ("the May 2015 IEP").  (*See* ALJ Decision at 2; 1st C.E. Decl. ¶ 5, Ex. 2 ("5/15 IEP").)  The May 2015 IEP had two stages:  (1) N.E. would finish the end of the 2014-15 school year in the agreed-upon individual classes; and (2) N.E. would be placed in separate classes at the start of the 2015-16 school year.  (*See* ALJ Decision at 2-3; 1st C.E. Decl. ¶ 5; 5/15 IEP at 15-16.)  The Parents did not file an administrative due process challenge to the May 2015 IEP and instead allowed N.E. to continue attending the individual classes until the school year ended on June 22, 2015.  (*See* ALJ Decision at 2-3; 1st C.E. Decl. ¶ 7.)

The Parents and N.E. moved to Seattle in the summer of 2015 and contacted the District to enroll N.E. for the 2015-16 school year.  (*See* ALJ Decision at 3; 1st C.E. Decl. ¶ 8; Landwehr Decl. ¶ 7.)  The Parents requested that the District place N.E. in

classes similar to the individual classes N.E. had attended during the final part of the prior school year. (*See* ALJ Decision at 3; Landwehr Decl. ¶ 7.) The District reviewed N.E.'s records and decided to place him in separate classes similar to those contemplated in the second part of the BSD's May 2015 IEP. (*See* ALJ Decision at 3; 1st C.E. Decl. ¶ 8; Landwehr Decl. ¶ 7.)

The Parents objected and filed an administrative due process challenge to the District's decision. (*See* ALJ Decision at 3; Hruska Decl. ¶ 2, Ex. 1 ("DP Hearing Req.")); 20 U.S.C. § 1415(f). At the same time, the Parents filed a motion for "stay put," arguing that N.E.'s stay-put placement is his placement in general classes as described in the December 2014 IEP. (*See* ALJ Decision at 3; DP Hearing Req. at 3; 1st Hruska Decl. ¶ 3, Ex. 2 ("Stay-Put Mot.")); 20 U.S.C. § 1415(j) (stating that pending a due process challenge, "the child shall remain in the then-current educational placement of the child"). The District contended that the separate classes described in the May 2015 IEP represented the appropriate stay-put placement for N.E. (*See* ALJ Decision at 3; 1st Hruska Decl. ¶¶ 4-6, Exs. 3-5.) Following testimony and oral argument on the stay-put motion, the ALJ sided with the District and concluded that separate classes were N.E.'s stay-put placement. (*See* ALJ Decision at 1, 4.)

Plaintiffs' interlocutory appeal seeks reversal of the ALJ's stay-put decision and a declaration that the District is required to place N.E. in a general education setting consistent with his December 2014 IEP pending the outcome of Plaintiffs' due process challenge to the District's intended placement. (Compl. at 5.) Upon filing this appeal, Plaintiffs sought a temporary restraining order ("TRO") and preliminary injunction

ordering the District to place N.E. in general classes pending the due process challenge. (*See* Compl.; TRO Mot. (Dkt. # 2); 10/27/15 Order (Dkt. # 11) at 5.) The court denied Plaintiffs' motion because the court found no support for Plaintiffs' theory that the court could "ignore any unrealized stages of a multi-stage IEP or treat such stages as distinct IEPs." (10/27/15 Order at 9.)

Plaintiffs appealed the court's decision to the Ninth Circuit Court of Appeals. (*See* Not. of Appeal (Dkt. # 15).) On November 11, 2016, the Ninth Circuit affirmed the court's denial of the TRO and preliminary injunction. *See N.E. by and through C.E. & P.E. v. Seattle Sch. Dist.*, 842 F.3d 1093, 1098 (9th Cir. 2016) (holding that "[s]tage two of the May 2015 IEP . . . was N.E.'s stay-put placement"). On February 3, 2017, the Ninth Circuit issued its formal mandate, returning the case to this court's jurisdiction. (Mandate (Dkt. # 23).)

The parties took no further action in this matter after the Ninth Circuit issued its mandate until the court ordered Plaintiffs to show cause why the case should not be dismissed as moot. (3/9/17 OSC (Dkt. # 24) at 5.) In Plaintiffs' response to the court, they contended that an actual controversy regarding N.E's educational placement continues to exist. (Resp. to OSC (Dkt. # 25) at 2.) Plaintiffs did not inform the court of the status of their underlying due process claim. (*See generally id.*)

When the court ordered Plaintiffs to show cause, the court also afforded the District an opportunity to respond (3/9/17 OSC at 5), but the District did not file a response at that time (*see* Dkt.). Rather, on March 30, 2017, the District moved to

//

dismiss this matter as moot. (*See generally* Mot.) Plaintiffs oppose the District's motion (Resp. at 1), which the court now addresses.

### III. ANALYSIS

#### A. Legal Standard

Mootness is often characterized "as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes v. Shalala,* 166 F.3d 986, 989 (9th Cir. 1999) (internal quotation marks omitted). Mootness is a jurisdictional issue, so any party can raise the issue at any time. *See United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007); *R.F. by Frankel v. Delano Union Sch. Dist.*, --- F. Supp. 3d ----, 2016 WL 7338597, at *3 (E.D. Cal. Dec. 19, 2016). "[F]ederal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). A case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the case. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998); *see also Chafin v. Chafin*, 568 U.S. 165, ---, 133 S. Ct. 1017, 1023 (2013) ("[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)); *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) ("[A] federal court loses its jurisdiction to reach the merits of a claim when the court can no longer effectively remedy a present controversy between the parties."). The party asserting that a case has become moot bears a "heavy burden of establishing that

there is no effective relief remaining for a court to provide." *Strong*, 489 F.3d at 1059 (internal quotation marks omitted).

**B.     The District's Motion**

The District argues that this case is moot because the "only issue in this interlocutory appeal is the Student's stay-put placement during the pendency of the Parents' underlying administrative due process case," which the ALJ "dismissed with prejudice on November 23, 2016." (MTD at 1.) The District argues that "[a]ny disputes over the District's future proposed placements fall outside the scope of the underlying due process matter, which related to the special education services offered by the District for the 2015-2016 school year." (*Id.* at 5.) Plaintiffs argue that there continues to be an actual controversy because they "seek compensatory education and reimbursement for costs associated with their stay-put claim" and on April 26, 2017, filed a petition for writ of certiorari in the United States Supreme Court. (Resp. at 3; *see also* 2d Hruska Decl. (Dkt. # 31) ¶ 2, Ex. 1 ("Pet.").) They further argue that the stay-put placement issue is capable of repetition yet evades review. (*Id.* at 4.)

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe,* 484 U.S. 305, 310 (1988)). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To provide a FAPE in compliance

with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine an appropriate educational placement for the student. 20 U.S.C. § 1414.

If a parent disagrees with a school district's proposed IEP, the parent may challenge that IEP by requesting an administrative due process hearing. *See* 20 U.S.C. § 1415(b)(6), (f)(1)(A). A parent may also enroll the child in a private program, and, upon establishing that the public school failed to provide a FAPE, seek reimbursement. *See* 20 U.S.C. § 1412(a)(10)(C)(ii). Most relevant to this case, the IDEA's stay-put provision permits a child to stay in the child's current educational placement during the pendency of any administrative or judicial proceeding regarding a due process complaint. *See* 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d); *Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 6 (1st Cir. 1999) (Because Section 1415 "makes available both administrative proceedings and judicial actions to appeal the administrative determination, subsection 1415(j) provides for 'stay put' placement throughout both the administrative and judicial proceedings challenging a placement decision.").

On September 9, 2015, the Parents filed an administrative due process action challenging N.E.'s IEP for the 2015-16 school year. (DP Hearing Req. at 1.) While that action was pending, N.E. was entitled to stay-put placement. 20 U.S.C. § 1415(j); (ALJ Decision.) In this interlocutory appeal of the ALJ's stay-put decision, Plaintiffs seek four forms of relief: (1) vacatur of the ALJ's particular stay-put decision; (2) a declaration that N.E. is entitled to a stay-put placement pursuant to the December 2014 IEP, rather

than the May 2015 IEP; (3) an order that the District provide stay-put placement pursuant to the December 2014 IEP; and (4) attorneys' fees and costs. (Compl. at 5.) However, on November 23, 2016, the ALJ dismissed the Parents' due process claim related to the 2015-16 school year based on the Parents' stipulation. (Hokit Decl. (Dkt. # 28) ¶¶ 3, Ex. 2 ("4/8/16 ALJ Order") at 7-8 (granting continuance of hearing on due process claim because the Parents agreed to request dismissal with prejudice of the due process claim "if the Ninth Circuit rules against the Parents on the merits of their stay-put claim"), 4, Ex. 3 ("ALJ Dismissal").)

Based on these facts, the District has met its burden of demonstrating that there is no longer an active controversy related to N.E.'s stay-put placement pending the 2015-16 due process claim. *See Strong*, 489 F.3d at 1059; *cf. Eddins v. Excelsior Indep. Sch. Dist.*, 88 F. Supp. 2d 695, 702 (E.D. Tex. 2000) (stating in an IDEA case that "abandonment of a claim renders it moot"). The court is no longer able to afford any relief to Plaintiffs because the relief they seek relates directly to N.E.'s stay-put placement pending that particular due process claim, *Bowen*, 752 F.3d at 836; (Compl. at 5), which is now dismissed (*see* ALJ Dismissal). Nevertheless, Plaintiffs attempt to revive the case by arguing that they claim compensatory education costs, have filed a petition for writ of certiorari with the Supreme Court to appeal the Ninth Circuit's interpretation of N.E.'s stay-put placement, and this matter is capable of repetition, yet evades review. (Resp. at 2-6.) The court addresses each of these arguments in turn and concludes that they are insufficient to demonstrate that the case is not moot.

//

### 1. Compensatory Education Costs

Although a claim for compensatory education benefits or reimbursement may defeat a mootness challenge in an IEP placement dispute, such a claim will not save a case where the plaintiff's "pending complaint fails to present properly a claim for compensatory education." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 89 (2d Cir. 2005); *cf. Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 890 (9th Cir. 1995) (holding that because the tuition reimbursement claim constituted a live controversy, the case was not moot); *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 558, 597 (7th Cir. 2006) (holding that the case was moot because the parents had abandoned their claim for reimbursement). Plaintiffs have not alleged a claim for compensatory costs (*see generally* Compl.; Dkt.), and Plaintiffs' general plea for "such further and additional relief as may be just and proper" insufficiently states such a claim, *Lillbask*, 397 F.3d at 90 (concluding that a "general claim for 'other such relief as the Court deems appropriate'" does not assert a request for compensatory education benefits); *Toyo Tire & Rubber Co. v. Fitinparts-USA, LLC*, No. SACV 15-513-JLS (RNBx), 2016 WL 5219465, at *2 (C.D. Cal. June 3, 2016) (stating that "boilerplate or formulaic language" in a prayer for relief "is not the same as requesting a specific type of remedy"). Accordingly, a claim for reimbursement is not properly before the court. *See, e.g.*, *Lillbask*, 397 F.3d at 90 ("[T]he complaint fails to make any mention whatsoever of [the student's] need for compensatory education.").)

Although Plaintiffs do not raise the issue, the court further concludes that Plaintiffs' claim for attorneys' fees and costs also does not cure the mootness problem.

*See Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*, 249 F. App'x 583, 587 (9th Cir. 2007) ("That the attorney's fees issue was still outstanding is insufficient to keep the district court from finding [the party's] claims moot."). Even if the claim for attorneys' fees were sufficient, Plaintiffs do not appear to be entitled to attorneys' fees and costs. As discussed above, the Parents stipulated to the dismissal of their due process claim upon the Ninth Circuit's ruling and therefore are not a prevailing party. *See* 20 U.S.C. § 1415(i)(3)(B) (stating that a "prevailing party" may be awarded attorneys' fees in an IDEA case); *Dep't of Educ. Hawai'i v. C.B. ex rel. Donna B.*, Civ. No. 11-00576 SOM/RLP, 2013 WL 704934, at *5-6 (D. Haw. Feb. 26, 2013) (stating that a "claim for attorney's fees in connection with having prevailed on the 'stay put' issue" may not be moot even if the stay-put issue is moot due to the student's graduation); (Hokit Decl. ¶ 3, Ex. 2 ("4/14/16 ALJ Order") at 12 ("If what results from [the Ninth Circuit's] decision . . . is that the Student's stay-put placement is either 'general classes' or 'individual classes,' then the Parents will have prevailed on their stay-put claim. If the result is that the Student's stay-put placement is 'special classes,' then the District will have prevailed on the Parents' stay-put claim." (emphasis omitted)).) Accordingly, Plaintiffs' assertions that they are entitled to fees and costs does not provide a basis for the court to exercise further jurisdiction over this case.

    2.  <u>Petition for Writ of Certiorari</u>

Although Plaintiffs continue to disagree with the Ninth Circuit's interpretation of the appropriate standard for determining a stay-put placement, Plaintiffs' petition for review by the Supreme Court does not entitle N.E. to further stay-put placement

stemming from the Parents' 2015-16 due process complaint.[2] *See R.F.*, 2016 WL 7338597, at *3 (citing 20 U.S.C. § 1415(j) ("The stay-put provision of the IDEA mandates that, while a due process challenge is pending, a student is entitled to remain in his or her 'then-current educational placement . . . .'")). As the Ninth Circuit has stated, "the stay-put provision is designed to allow a child to remain in an educational institution pending litigation. It does not guarantee a child the right to remain in any particular institution once proceedings have concluded." *See, e.g.*, *Marcus I. ex rel. Karen I. v. Dep't of Educ.,* 434 F. App'x. 600, 601 (9th Cir. 2011) Accordingly, "the fact that dismissing an appeal as moot would remove a child from the protection of the stay-put provision cannot in and of itself create a live controversy, as the stay-put order will lapse however the litigation concludes." *Id.* (internal citation omitted). Because N.E. is no longer entitled to stay-put placement regarding the 2015-16 due process claim, Plaintiffs' petition for writ of certiorari regarding that placement does not cure the mootness issue.[3]

---

[2] Plaintiffs did not seek a stay of the Ninth Circuit's mandate pending Plaintiffs' petition for certiorari to the Supreme Court or seek a stay of further proceedings from this court while Plaintiffs await the Supreme Court's decision on their petition. *See* Fed. R. App. P. 41(d)(2); (Mandate; *see also* Dkt.) For these reasons, the court is obligated to reevaluate its subject matter jurisdiction, even though Plaintiffs' petition is pending. *See Strong*, 489 F.3d at 1059 ("Mootness is a jurisdictional issue which we address at the threshold."); *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008) ("[F]ederal courts normally must resolve questions of subject matter jurisdiction before reaching other threshold issues."); *United States v. Cook*, 705 F.2d 350, 351 (9th Cir. 1983) (holding that because the mandate was "issued and neither stayed nor recalled, the Supreme Court's action on [the party's] certiorari petition is thus irrelevant" to the district court's disposition of a motion).

[3] Nor does the Parents' newly filed due process hearing request cure the mootness of the current action. (*See* P.E. Decl. (Dkt. # 29-1) ¶¶ 9 ("Because N.E.'s last IEP expired in September 2016, my wife and I are now seeking appropriate educational placement for N.E. in the District for the 2016-2017 school year."), 10 ("On April 17, 2017, we filed a new due process request with the Office of the Superintendent of Public Instruction including a motion for stay

### 3. Capable of Repetition, Yet Evading Review

Finally, the Parents argue that the "capable of repetition, yet evading review" exception to mootness applies to this case. (Resp. at 4-5.) They contend that "[t]his dispute has well exceeded the one-year lifespan of an IEP, thus[] proving the lifespan of N.E.'s IEP was too short in duration to be fully litigated." (*Id.* at 5.) Finally, the Parents argue that "N.E. is not just likely to be subject to the same action again, N.E. is presently subject to the same District action"—the District's alleged "failure to offer adequate educational placement." (*Id.*)

The "capable of repetition, yet evading review" doctrine is a narrow exception to mootness. *Bowen*, 752 F.3d at 836-37 ("Because mootness concerns whether [a court] has the power to hear a case," courts must "apply the 'capable of repetition, yet evading review' exception sparingly, and only in 'exceptional situations.'"). The exception "applies only when (1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000). An action is too short in duration to be fully litigated only when the controversy is of "inherently limited duration" because the exception "is concerned not with particular lawsuits, but with classes of cases that,

---

put seeking stay put placement pursuant to N.E.'s December 2014 IEP.").) Although the Parents once again seek stay-put placement based on the December 2014 IEP, they do so in connection with a due process claim related to N.E.'s appropriate educational placement for the 2016-17 school year. Accordingly, the court can afford no further relief regarding stay-put placement related to a due process challenge of N.E.'s educational placement for the 2015-16 school year. The ALJ dismissed that challenge with prejudice. (*See* ALJ Dismissal.)

absent an exception, would always evade judicial review." *Bowen*, 752 F.3d at 836 (internal citations, quotation marks, and emphasis omitted).

"Controversies that are not of inherently limited duration do not create exceptional situations justifying the rule's application, because, even if a particular controversy evades review, there is no risk that future repetitions of the controversy will necessarily evade review as well." *Id.* at 837 (internal quotation marks omitted). Accordingly, courts will not apply the exception where the party's own action or failure to act has rendered the action moot. *Cf. id.* (stating that a party may not "profit" from the exception where the party failed to seek and obtain "prompt relief"). Where such a circumstance exists, "the controversy must be resolved in a future action presenting a live dispute." *Id.*

The controversy regarding N.E.'s stay-put placement pending the due process claim regarding the 2015-16 school year was not of inherently limited duration. Indeed, N.E. was entitled to stay-put placement as long as the due process claim and any judicial appeals of that claim were pending. *See* 20 U.S.C. § 1415(i)(2), (j). Here, the Parents stipulated to dismiss their due process claim upon the Ninth Circuit's ruling regarding N.E.'s stay-put placement, if the ruling was unfavorable to them. (*See* 4/8/16 Order at 7-8.) Although courts have held that "IEP challenges usually endure longer than the nine-month school year," *Brown*, 442 F.3d at 599, this particular action was limited in duration only because the Parents' dismissal cut the case short. Thus, it is not the case that a controversy like the one Plaintiffs raise regarding the stay-put placement will

//

always evade judicial review. Indeed, if the Parents had not stipulated to dismissal of their underlying claim, it is possible that additional judicial review would be warranted.

In addition, even though Plaintiffs now challenge N.E.'s IEP for the 2017-16 school year, it is unclear whether N.E. has been subjected to the same action. Little information about the new due process claim is before the court, the court recognizes that the Parents may have raised new issues related to N.E.'s 2016-17 IEP that they did not raise in relationship to the 2015-16 IEP. (*See* P.E. Decl. ¶¶ 9-10 (stating that the Parents have filed a new due process claim but not providing a copy of that claim to the court)); *Brown*, 442 F.3d at 599 ("Our decision would merely tell the parties who was correct about [the] outdated IEP."). Nevertheless, even if N.E. has again been subjected to the same action, Plaintiffs fail to demonstrate the first prong of the exception. Accordingly, the court concludes that Plaintiffs' case does not fall within the capable of repetition, yet evading review exception.[4]

//

//

//

//

---

[4] The District also argues that the law of the case doctrine renders this case moot because the Ninth Circuit has determined the appropriate stay-put placement and this court is bound to follow that ruling in subsequent proceedings. (Mot. at 5-6.) Although the court agrees that it is bound to follow the Ninth Circuit's decision, the court notes that if the Supreme Court were to issue a contrary ruling, the court would be bound to follow the Supreme Court's ruling. Given the court's determination that this matter is moot because the ALJ dismissed the underlying due process claim, the court declines to further address this particular argument.

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS the District's motion to dismiss (Dkt. # 27).

Dated this 16th day of May, 2017.

JAMES L. ROBART
United States District Judge